## Peoples Bank of Tompkinsville v. Keating Brothers.

(Decided November 13, 1917.)

### Appeal from Shelby Circuit Court.

1. Banks and Banking—Deposits—Borrowing Contract With Bank.—A firm having a contract with a county to construct a turnpike procured the plaintiff bank to place to its credit one thousand dollars, which the contracting firm afterward checked out for its own purposes in carrying out the contract, and at the time gave an order to the bank upon the board representing the county and having the work in charge for the sum placed to the debtor's credit, but a part of which was never paid by the county; it further appearing that members of the firm on a number of occasions stated that it had borrowed the money from the bank. Held, that the firm was primarily liable to the bank, and that the transaction was a borrowing by the firm from the bank, and not one of the county borrowing from the bank.

2. New Trial—Evidence.—Where the evidence shows that a directed verdict should have been given for one party, a verdict returned in favor of the other party under the given instructions is both contrary to the evidence and unsupported by it so as to authorize the granting of a new trial upon those grounds, although no motion was made by the losing party for a peremptory instruction.

WILLIS, TODD & BOND for appellant.

BEARD & PICKETT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellees, Keating Brothers, who were defendants below, were contractors engaged in the business of constructing roads. They had a contract with Monroe county, Kentucky, to construct, according to certain spec-

ifications, about eight miles of turnpike leading from Tompkinsville to McMillan Landing, all in that county. The county was to pay a little less than two-thirds of the entire cost, and the balance was to be paid by private subscription. Shortly after the work begun, and which was under the charge of the defendant, Pat Keating, the appellant, according to its contention, advanced for the use and benefit of the defendants as such firm, and at its instance and request, the sum of $1,000.00, which was placed to the firm's credit on the books of the bank and subsequently checked out by Pat Keating in payment for material and labor necessary in carrying out the contract. The date of that transaction was December 7, 1912, and at the time the defendants executed and delivered to the plaintiff bank this writing:

"Tompkinsville, Ky., Dec. 7, 1912.

"To the Board of Commissioners of the Tompkinsville and McMillan Ldg. Turnpike. Please pay to the Peoples Bank of Tompkinsville the sum of $1,000.00 and take out of collection of first four miles of road completed, for money advanced. Keating Bros. Con. by P. Keating. Accepted April 1, 1913, U. S. Harlan, R. E."

There was collected by plaintiff from the board of commissioners the sum of $323.75, which was credited on the back of the writing, and none of the balance having been paid either by the commissioners or the defendants, this suit was filed to recover the unpaid balance of the $1,000.00 so advanced.

The answer denied the entire transaction, and upon trial before a jury a verdict was returned in favor of the defendants, upon which judgment was rendered dismissing the petition, and to reverse which this appeal is prosecuted.

It is the contention of defendants that although the $1,000.00 was placed to their credit, it was nevertheless not a borrowing by them from the bank and that they did not in any way become obligated to the bank because of the credit, it being insisted by them that the money was obtained by the board for the county and was in the nature of an advancement by the latter to the defendants on the work in which they were engaged, and that the bank should collect its money from the county and not from the defendants.

The cashier of the bank, Kirkpatrick, states without equivocation that the money was loaned by him as the bank's cashier and on its behalf to the defendants on the date mentioned, and was placed to their credit on that

day; he files a copy of the regularly kept books of the bank showing that fact and that the money was afterward drawn out upon the firm's checks. This witness further states that Bradshaw, who was then chairman of the road committee, was present, and that it was at least partially upon his recommendation that the money was advanced to the defendants, and that on that date the writing hereinbefore copied was executed and delivered to the witness.

The witness Bradshaw in his testimony upon this subject says: "On one occasion I accompanied Pat Keating to the Peoples Bank of Tompkinsville, and he on that occasion borrowed one thousand dollars from that bank and gave Price Kirkpatrick, cashier of said bank, an order on the road commissioner for one thousand dollars, to be paid out of the first four miles of the pike completed. This was about December, 1912. Q. You say that he borrowed this money from said bank, you mean to say that Pat Keating made the arrangements with the bank for this $1,000.00 for the firm of Keating Brothers? A. I do; that is, that it was to be used in paying hands, &c., in the construction of the pike. This order was signed 'Keating Bros. by Pat Keating.' "

W. S. Harlan, who was the county engineer, in his testimony says: "Pat Keating told me in the presence of Price Kirkpatrick, cashier of the Peoples Bank of Tompkinsville, that he (Pat Keating) had borrowed from the Peoples Bank of Tompkinsville, for the firm of Keating Brothers, one thousand dollars, to be paid out of the first four miles of the pike completed," &c.

The testimony of these witnesses was partially substantiated by the witness, U. G. Boyles, who was in some way appointed to collect the subscription made by private citizens toward the construction of the road.

The only witness who testified for the defendants was Pat Keating, and he acknowledged the execution of the writing and that he used the one thousand dollars placed to his firm's credit in the manner stated by the cashier of plaintiff, but he states that *he* did not borrow the money for his firm; that, on the contrary, it was borrowed by Mr. Bradshaw, either for the board of commissioners or for the county (which would in law be the same), but he states no fact justifying that conclusion. Nowhere is it intimated by him or any other witness nor by any circumstance that the bank at the time *gave credit* either to the county, the board of commissioners,

or any other person or persons except the firm of Keating Brothers.

Under the contract with the county only eighty-five per cent. of the contract price was to be paid during the progress of the work, and at the time of the transaction in question there had been only about two months' work done on the contract, which was not entirely finished for nearly one year thereafter. As the work had been so recently commenced, but a small per cent. of the contract price was demandable by the defendants at the time of the transaction involved. Material was being obtained, the labor pay roll was large, and defendants necessarily needed funds, perhaps, in a much larger sum than they were entitled to collect at that time from the county, and to meet their necessities it was arranged that the bank should advance to them the money sued for. At that time it is not contended that the commissioners were vested with any authority to borrow money from the bank on behalf of the county, and, indeed, as the record appears the county could not be made to pay the debt, even if the commissioners had attempted to bind it. Furthermore, the writing itself shows that the debt was one due from Keating Brothers, and it directed therein that such debt be paid by its debtor, the county. It would be somewhat of an anomaly for the defendants to give a writing directing the county to pay its own debt, which would have been the case if the defendants' theory be correct. Moreover, the county seems to have paid Keating Brothers all that was due them under the contract, not charging them with, or in any manner taking into account, the one thousand dollars in question. It is true that there appears to be about $2,400.00 still uncollected from the subscriptions of the citizens, but whether this will ever be collected does not appear, as there is nothing to show whether any of it is solvent. But, however that may be, the plaintiff is under no obligation to look primarily to that fund and to exhaust it before it may sue the defendants to whom it advanced the money in the first instance. If defendants' theory be correct, it would have been altogether unnatural for the county to have made the payments it has without taking care of this one thousand dollars borrowed from the bank. Somebody owes the money, and it is undisputed that the defendants checked it out of the bank after having obtained credit for it, and there is nothing to show, as we have seen, that the county in settling with defendants deducted anything on account thereof.

The motion for a new trial complains of instruction number one, being the only one that the court gave to the jury, none other being offered by either party. Complaint is also made in the motion of incompetent evidence which the court admitted to be heard by the jury, over plaintiff's objection, and lastly, that "the verdict is contrary to the evidence, and not supported by the evidence."

The incompetent evidence complained of is the introduction of the contract which defendant had with Monroe county, but we fail to see what effect either one way or the other that contract had upon the only issue in the case. While technically it might have been error, inasmuch as it had no bearing upon the question being investigated, still it cannot in the slightest be considered prejudicial. Neither do we think that the complaint about the witness Keating saying that he did not sign the writing which he executed to the bank until after the date which it bears of any consequence. Just when that writing was actually signed can have no material effect, as we view it, upon the question being investigated. We are convinced, however, that the verdict is contrary to the evidence and is not supported by it.

As will have been seen, the testimony of the only witness introduced on behalf of the defendants is the statement of a conclusion of his when he says that he did not borrow the money for the firm, but that the board of commissioners did so. When the facts concerning the transaction as developed by the record, are looked into, it is clearly, to our minds, a transaction between the bank and the defendants. The witness for the defendants did not deny the statements made by plaintiff's witnesses when they stated that he said on several occasions that he had borrowed the money from the bank for his firm, and it is our conclusion that the court should have directed a verdict for the plaintiff for the amount claimed in its petition. However, there was no motion made to that effect, but surely a verdict of a jury rendered for the party against whom a verdict should have been directed is one that is contrary to the evidence and not supported by it.

The judgment is reversed with directions to grant a new trial, and for proceedings consistent with this opinion.